## NAT. BRUEN, Appellant, v. SARAH E. DUNN *et al.*, Appellees.

Fraudulent Conveyances: INNOCENT GRANTEE. A conveyed land to B, and B conveyed to A's wife. So far as A and B were concerned, both conveyances were designed to defraud creditors, but there was no evidence that A's wife had any knowledge of their fraudulent intent in either conveyance. She gave fair value for the land, and, in her testimony, gave good reasons for purchasing it; and, though she purchased upon the advice of her husband, the evidence failed to show that he was her agent in the transaction. *Held,* that she was a good faith purchaser, and that the land could not be subjected, in her hands, to the payment of her husband's debts.

*Appeal from Audubon District Court.*—HON. H. E. DEEMER, Judge.

TUESDAY, JANUARY 31, 1893.

PLAINTIFF, a judgment creditor of A. M. Dunn, prosecutes this action in equity to set aside a warranty deed from A. M. Dunn to William M. Dunn for certain lands, executed May 28, 1880; also to set aside a deed of conveyance for said land from William M. Dunn to Sarah E. Dunn, executed November 5, 1885; and that said land be subjected to the payment of his judgment. He alleges that the deed to William M. Dunn was voluntary, without consideration, and executed and

received with intent to defraud the creditors of A. M. Dunn; that William M. Dunn held the premises in trust under the fraudulent conveyance to him, and that, with intent to defraud his creditors and those of A. M. Dunn, he conveyed the premises to Sarah E. Dunn; that Sarah E. Dunn well knew the said intent of William M. Dunn, and that the land conveyed to her was the property of A. M. Dunn; "that the said Sarah E. Dunn, colluding and conspiring with said A. M. Dunn and William M. Dunn to keep said property out of reach of the creditors of the said A. M. Dunn and William M. Dunn, pretended to purchase the premises conveyed to her by William M. Dunn; and that the consideration that she paid therefor, if any, for the making of said deed to her, was grossly inadequate to the real value of said premises."

The defendants answered, admitting that the plaintiff recovered judgment against A. M. Dunn for two thousand and fifty-two dollars and ten cents, as alleged; admitting the execution and delivery of the deeds; and denying every other allegation in the petition. They allege that both of said deeds were made in good faith, for valuable consideration, and without intent to defraud the plaintiff, or any other person. The cause being submitted, decree was entered, finding that Sarah E. Dunn is a *bona fide* purchaser for value of the premises described, and that she does not hold the same subject to any lien or claim of the plaintiff, and the plaintiff's petition was dismissed. The plaintiff appeals.—*Affirmed.*

*Nash, Phelps & Green,* for appellant.

*B. I. Salinger,* for appellees.

GIVEN, J.—We have before us the abstract, and two additional abstracts, of the appellant, and three additional abstracts of the appellees, and denials that

have necessitated the examination of a transcript of about two hundred and sixty pages. The examination convinces us that the denials that imposed this extra labor are technical and without any real merit. All the material features of the case are contained in the several abstracts. The law involved in these issues is well established and familiar, and the facts are, in the main, similar to those usually presented in this kind of cases. There are few, if any, classes of cases more frequently before the courts than creditors' bills, and, hence, the books abound in opinions in such cases. Counsel, with evident zeal and care, cite scores of these cases, but a consideration of the case does not require that we here notice these numerous citations. The facts are somewhat voluminous, and a discussion of them in detail would consume space unnecessarily, and is not in accordance with the practice of this court.

The law is well settled that, if property be conveyed with the design on the part of the vendor, participated in by the vendee, to defraud his creditors, the vendee's title will not be protected, notwithstanding he pays a sufficient consideration. *Chapel v. Clapp*, 29 Iowa, 191; *Williamson v. Wachenheim*, 58 Iowa, 277. In such a case the creditor may have the conveyance set aside, and the property subjected to the payment of his debts. A *bona fide* purchaser for value, without knowledge of the intended fraud, will, however, be protected in his title. See McClain, Dig. "Fraudulent Conveyances." The protection of the law being extended only to good-faith purchasers, a succession of fraudulent conveyances may be set aside in an action by the creditor of the first grantor; but, when the original or succeeding conveyance is to a good-faith purchaser, he will be protected in his title. That the conveyance from A. M. Dunn to William M. Dunn was executed and accepted with intent to defraud the creditors of A. M. Dunn, we are in no doubt. We are

equally convinced that so far as A. M. Dunn and Wm. M. Dunn are concerned, the deed to Sarah E. Dunn was procured by A. M. Dunn to be executed and was executed by William M. Dunn with the intent to defraud the creditors of both. The real contention is, whether Sarah E. Dunn colluded and conspired with them in their fraudulent purpose.

This same question was before this court in the case of *Dunn v. Wolf*, 81 Iowa, 688, wherein it was held that there was a sufficient showing to implicate Sarah E. Dunn in the intended fraud of William M. Dunn, and sustaining the district court in dismissing her petition. One of the reasons given for the conclusion is, "the failure of the plaintiff, in her own behalf, to explain the many badges of fraud against her apparent on the trial." The evidence now before us is not materially different from that then presented as to the badges of fraud mentioned in that opinion; but in this case we have the evidence of Sarah E. Dunn taken at great length, wherein we think she explains these badges of fraud, and shows herself to have purchased the property in good faith, for value, and without any participation in or knowledge of the intended fraud of A. M. and William M. Dunn. Her evidence being quite lengthy, it is not practicable to even state the substance thereof in full. As to the relation of the parties, it shows that she was married to A. M. Dunn in March, 1883; that she did not then know William; and that thereafter he only visited them occasionally when in town; that she did not know anything about the property of A. M. or of William, only that William owned the farm in question; that she did not know what debts there were owing; and that she did not know anything about the case with Wolf, only that they were having such a lawsuit. She states as her reason for buying the farm that she had sold a farm which she owned eight miles from town to her brother,

for the reason that it was too far out to live upon, and unprofitable to rent because of the expense of getting her share of the grain to market; that she had sold the property which she owned in the town, and desiring to get her money all into one property and regarding the farm in question as a desirable place for a home, she consented to the purchase. She says the matter was talked about between William M. Dunn, her husband, and herself, for some time before the purchase, and that her husband advised her as to the value of the property. She testifies that she paid W. M. Dunn two thousand dollars, and agreed to pay certain incumbrances and taxes upon the land, and certain other debts of W. M. Dunn for the land and for certain personal property, for which William gave her a bill of sale. While the evidence is conflicting, yet, upon the whole record, we are led to the conclusion that Sarah E. Dunn, though persuaded by her husband to do so for a fraudulent purpose, purchased the land and personal property in good faith, and without knowledge of the intended fraud, and that she paid a reasonable consideration therefor. The estimates of value placed upon the property by the different witnesses vary greatly. It is evident, however, that the property was less valuable at the time of this purchase than in later years, in which some of the witnesses state the value. The consideration paid was certainly not so inadequate as to justify a presumption of fraud.

The evidence shows that, since their marriage, A. M. Dunn has looked after the business of his wife, and that he was active in advising and bringing about this transaction between Mrs. Dunn and W. M. Dunn. The appellant contends that he was the agent for Mrs. Dunn in this transaction and that she is bound by his knowledge of the fraud. The evidence does not show agency; it does not appear that Mr. Dunn had authority to or assumed to do anything that would bind his

wife. He inquired for her, and advised her, but she reserved to herself the exclusive right to approve or disapprove. We should add that there is no evidence whatever that Mrs. Dunn had any knowledge of the fraud intended in the making of the conveyance from A. M. Dunn to William M. Dunn.

Our conclusion is that the judgment of the district court should be AFFIRMED.